## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| EDUART TONA, and | : | CIVIL CASE NO. |
| JERINA TONA, | : | 3:23-CV-00498 (JCH) |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| COCA-COLA BEVERAGES NE., INC., | : | NOVEMBER 3, 2023 |
| and TODD ANDERSON, | : | |
| Defendants. | : | |
| | : | |

### RULING ON MOTION TO REMAND (DOC. NO. 6)

**I.  INTRODUCTION**

Plaintiffs, Eduart Tona ("Mr. Tona") and Jerina Tona ("Ms. Tona") move to remand the case to the Connecticut State Superior Court for the Judicial District of Waterbury for lack of subject matter jurisdiction and for the payment of costs, expenses, and attorney's fees.  See Mot. to Remand to State Court ("Mot.") (Doc. No. 6); Reply to Defs.' Opp.to Mot. ("Reply") (Doc. No. 14).  Defendants, Coca-Cola Beverages Northeast, Inc ("Coca-Cola"), and Todd Anderson ("Mr. Anderson") oppose this Motion. See Opposition to Plaintiffs' Mot. to Remand ("Opp.") (Doc. No. 13).

For the reasons stated below, the court grants the Motion to Remand and denies the plaintiffs' request for costs, expenses, and attorney's fees.

**II.  BACKGROUND**

A.  Allegations in Complaint

Mr. Tona was employed by Coca-Cola as a truck driver.  See Compl. ¶¶ 1-3.  He was also a member of Teamsters Local Union 1035 (now 677).  Id. at ¶ 3.

1

On April 30, 2016, Mr. Tona was involved in a vehicle accident while operating one of Coca-Cola's vehicles, resulting in injuries to "his chest, left shoulder, right hip, and right knee."  Id. at ¶ 4.  Mr. Tona filed a claim pursuant to Connecticut Workers' Compensation Act ("CWCA").  Id. at ¶ 5.  The defendants "vigorously and frivolously resisted" providing compensation under the Act.  Id. at ¶ 4(c).

On August 11, 2022, Mr. Tona was called into Mr. Anderson's office, where he was greeted by several people, some present virtually.  Compl., Count Three, ¶ 13(b). Mr. Tona was told that the meeting was an audit, and his logbook was on display.  Id. He was asked if he had made changes to his or anyone else's logbook.  Id.  Mr. Tona represented that he had done it for himself and Cody at the direction of the supervisor on duty.  Id.  When asked to reveal the name of the supervisor as well as others who were similarly making changes, he refused to do so, believing they would be fired.  Id. He was then informed he was suspended pending further investigation.  Id.  The Union Representative and the Warehouse Union Representative filed grievances against the people present in the office.  Id.

On or about August 17, 2022, Mr. Anderson, along with Fleet Manager Jason Lane ("Mr. Lane") and Union Steward Mike Prat ("Mr. Prat"), joined a call with Mr. Tona. Compl., Count Two, ¶ 6.  On this phone call, Mr. Anderson terminated Mr. Tona's employment for allegedly falsifying Department of Transportation ("DOT") hours of service records on four occasions.  Id. at ¶ 7.  Despite this August call, on November 17, 2022, Mr. Anderson called Edward notifying him again that Coca-Cola had terminated him.  Compl., Count Three, ¶ 13(c).

Mr. Tona alleges that, pursuant to 49 C.F.R. § 396.1, Coca-Cola drivers based in Naugatuck are exempt from DOT service hours; see id. at ¶ 8; (2) the Geotag software used by Coca-Cola to document driving hours does not purport to be "connected to the government"; id. at ¶ 9; and (3) Geotag hours were never properly recorded because drivers were not trained and because management directed the drivers to turn off the software.  Id. at ¶¶ 10, 11.

      B.    <u>Procedural History</u>

On March 14, 2023, Mr. Tona and Ms. Tona filed suit in Superior Court of Connecticut against Coca-Cola for terminating Mr. Tona's employment on the grounds of falsification of work hours and theft of time. Compl. (Doc. No. 2); Mot. at 1.  The plaintiffs bring four counts against Coca Cola for violation of Conn. Gen. Stat. § 31-290a ("Connecticut Worker's Compensation Act" or "CWCA"), defamation, unintentional infliction of emotional distress, and negligence.  Compl.

On April 20, 2023, the defendants removed the action to federal court, pursuant to 28 U.S.C. §§ 1331, 1441, and 1446 and Fed. R. Civ. P. 81.  <u>See</u> Notice at 1-2.  The Tonas filed their Motion to Remand on April 24, 2023.  <u>See</u> Mot.  On April 26, 2023, the defendants filed their Answer, and on May 12, 2023, filed their Opposition to the Motion to Remand.  <u>See</u> Answer with Special Defenses ("Answer") (Doc No. 12); Opp. (Doc. No. 13).  The Tonas filed their Memorandum in Opposition to the Defendants' Objection on May 15, 2023.  <u>See</u> Reply (Doc. No. 14).

## III.    STANDARD OF REVIEW

The federal removal statute permits removal of any "civil action [that] includes . . . a claim arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1441(c).  Defendants bear the burden of proving that removal is proper.  <u>O'Donnell v.</u>

AXA Equitable Life Ins. Co., 887 F.3d 124, 128 (2d Cir. 2018) (citation omitted); see

Syngenta Crop Prot., Inc. v. Henson, 537 U.S. 28, 32 (2002) ("The right of removal is

entirely a creature of statute and a suit commenced in state court must remain there

until cause is shown for its transfer under some act of Congress." (citation and internal

quotation marks omitted)).

## IV.   DISCUSSION

### A.   Complete Preemption Corollary to the Well-Pleaded Complaint Rule

In support of their Motion to Remand, the Tonas argue that the well-pleaded

complaint rule prevents removal of the case at bar.  See Mot. at 3-4.  The defendants

argue that the plaintiffs' claims fall into an exemption to the rule because the state

claims are dependent on the CBA and are thus completely preempted by section 301 of

the Labor Management Relations Act ("LMRA").  See Notice of Removal ("Notice") (Doc

No. 1); Obj. (Doc. No. 13) at 3.  The Tonas counter that section 301 preemption only

occurs when resolution of the state claims requires interpretation of the CBA rather than

mere reference to it.  See Reply at 4-5.

Section 1441 of title 28 authorizes removal of a "civil action brought in a State

court of which the district courts of the United States have original jurisdiction." 28

U.S.C. § 1441.  In the absence of diverse parties, federal courts only have original

jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the

United States."  28 U.S.C. §§ 1331.  This statute is "governed by the 'well-pleaded

complaint rule'."  State by Tong v. Exxon Mobil Corp., -- F.4th --, 2023 WL 6279941, at

*4 (2d Cir. 2023) (quoting Caterpillar, Inc. v. Williams, 482 U.S. 386, 392-93 (1987)).

"Under that rule, federal-question jurisdiction generally 'exists only when a federal

question is presented on the face of the plaintiff's properly pleaded complaint' and

cannot be triggered 'on the basis of a federal defense, . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.'" Exxon, 2023 WL 6279941, at *4 (quoting Caterpillar, 482 U.S. at 393).

There are three exceptions to the rule.  See Fracasse v. People's United Bank, 747 F.3d 141, 144 (2d Cir. 2014).  Relevant here is the exception known as the "complete pre-emption corollary to the well-pleaded complaint rule".  Foy v. Pratt & Whitney Grp., 127 F.3d 229, 232 (2d Cir. 1997) (quoting Caterpillar, 482 U.S. at 392-93).  The corollary arises when a federal statute's preemptive force is so "'extraordinary that any claim based on preempted state law is considered a federal claim arising under federal law." Foy, 127 F.3d at 232 (2d Cir. 1997) (quoting Caterpillar, 482 U.S. at 392-93).  It applies to "[s]uits for violation of contracts between an employer and a labor organization representing employees" under LMRA § 301.  Foy, 127 F.3d at 232 (quoting 29 U.S.C. § 185(a)).  Furthermore, section 301 is so powerful that it also preempts state law claims that implicate a CBA.  Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 399 (1988).

However, section 301 only preempts state law if resolution of the state law claim requires interpretation of a CBA.  Id. at 408-09.  ("[Section] 301 pre-emption merely ensures that federal law will be the basis for interpreting [CBAs], and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements"). The Supreme Court held that a state tort and a CBA were not "inextricably intertwined" when the former "implicates the same analysis of the facts as would an inquiry under the just cause

provisions of the agreements."  Id. at 408 (quoting 823 F.2d at 1046).  "[P]urely factual questions pertain[ing] to the conduct of the employee and motivation of the employer" do not "require[ ] a court to interpret any term of a [CBA]."  Id. at 406.  "The bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."  Wynn v. AC Rochester, 273 F.3d 153, 157 (2d Cir. 2001) (quoting Livadas v. Bradshaw, 512 U.S. 107, 124 (1994))); see also Foy, 127 F.3d at 299.

> [E]ven if dispute resolution pursuant to a [CBA], on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes.

Lingle, 486 U.S.  at 409-10.  As the Second Circuit explained in a case very similar to this case, "[s]tate law provides the only source of the rights asserted by [the plaintiff]— the right to be free of defamation and the right to be free from the infliction of intentional harm.  The only questions that need to be resolved in [the plaintiff's] lawsuit are purely factual questions that center upon his conduct and upon the conduct and motives of . . . the defendants in the action."  Gay v. Carlson, 60 F.3d 83, 88 (2d Cir. 1995).

Limiting preemption to state law claims that necessitate interpretation of the CBA promotes the purpose "animating" section 301—uniform federal standards—while also preserving traditional state police power over labor standards." Lingle, 486 U.S. at 412 ("pre-emption should not be lightly inferred in this area"); see also Wynn, 273 F.3d at 158; Livadas, 512 U.S. at 23 (". . . § 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law.").

Thus, when there is no genuine dispute regarding the meaning of the CBA, there is no need for interpretation and consequently no preemption.  Wynn, 273 F.3d at 158.

Turning to the case before this court, nothing on the face of the Complaint expressly implicates section 301 or suggests that the court would need to interpret the CBA.  <u>See</u> Compl.  However, the defendants contend that the defamation claim in Count Two turns on interpretation of Article VII of the CBA and Work Rules because they claim Coca-Cola fired Mr. Tona for falsifying work records in violation of the CBA. Notice at ¶ 4.  The defendants further assert that this alleged basis for termination is the "nucleus" for the other claims in the Complaint.  Notice at ¶ 5.  The defendants thus argue that because "each claim hinges on the reason for the Company's decision to discharge Mr. Tona", the court will not be able to analyze any of the tort counts without first interpreting the CBA and the Work Rules.  Notice at ¶ 10.

To establish a <u>prima facie</u> case of defamation, a plaintiff must prove that (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." <u>See</u> <u>Gleason v. Smolinski</u>, 319 Conn. 394, 430 (2015) (quoting <u>Gambardella v. Apple Health Care, Inc.</u>, 291 Conn. 620, 627-28 (2009)).  The unintentional infliction of emotional stress claim requires the plaintiffs to prove that the defendants "should have realized that [their] conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." <u>Morris v. Hartford Courant Co.</u>, 200 Conn. 676, 683 (1986).  The negligence claim requires proof that the defendants' conduct was a substantial factor in bringing about the alleged injuries.  <u>Vodovskaia-Scandura v. Hartford Headache Ctr., LLC</u>, 192 Conn. App. 559, 583 (2019).  These elements give rise to factual inquiries that do not indicate the

necessity of interpreting any provisions or rules in the CBA.  See Lingle, 486 U.S. at 407.

In the Notice of Removal and the Objection, the defendants assert that resolution of the defamation, unintentional infliction of emotional distress, and negligence claims requires consideration of the following issues: (1) whether the CBA allows management to impose similar standards to those contained in DOT service requirements; (2) whether the CBA obligated the defendants to make a statement about the decision to discharge Mr. Tona; and (3) whether the alleged statement would be privileged and thus not actionable.  See Notice at ¶¶ 4-5, 10; Opp. at 5-6, 9-14.  These issues, according to the defendants, require interpretation the CBA and the Work Rules.  Opp. at 4-6, 9. However, the defendants fail to demonstrate why the claims necessitate interpretation rather than mere reference to the CBA or rules.

The defendants include the entirety of the CBA as an exhibit in their Opposition but specifically emphasize Article VII of the CBA and the Work Rules in their Notice of Removal.  See Notice at 4-6.  Article VII of the CBA provides that the employer has the right to discharge employees for just cause at its discretion.  Id. at 4.  It further provides that employer must "give at least one warning for infraction of the rules or of [a] specific complaint . . . except when discharge is for . . . [d]ishonesty", "refusal to obey reasonable orders of supervisors and to follow rules and procedures established by the Company", and "[f]alsification of any Company record.  Id. at 5.  The CBA Work Rules provide, in relevant part, that the employee must observe rules and be honest in their dealings with the company, and that first offenses of theft, punching another employee's timecard, falsifying work records, or misconduct which casts discredit upon company's

reputation or image while on duty or in company uniform will result in discharge.  Notice at ¶ 8.  These excerpts merely support the contention that the defendants acted pursuant to the CBA assuming they believed Mr. Tona violated a relevant work rule or provision.

However, whether or not management was acting pursuant to the CBA has little to no relation to the falsity of the defendants' statements.  See, e.g., Foy, 127 F.3d at 234-35 (finding the CBA's provisions irrelevant because, whether or not acting pursuant to the CBA, the question of the defendant's intent could not be determined from the agreement). Similarly, whether or not the CBA obligated defendants to make such statements and, thus whether a privilege exists, does not necessarily require more than reference to the CBA's provisions.

Therefore, section 301 does not preempt the plaintiffs' tort claims.  Accordingly, the court grants the plaintiffs' Motion to Remand.

B.    Fees and Costs

The plaintiffs seek costs and expenses, including attorneys' fees, pursuant to 28 U.S.C. § 1447(c).  See Mot. at 2.  Section 1447(c) provides in relevant part that "[a]n order remanding the case may require payment of just costs and any actual expenses, incurred as a result of the removal."  § 1447(c).  "Absent unusual circumstances, courts may award attorney's fees under 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal."  Martin v. Franklin Cap. Corp., 546 U.S. 132, 141 (2005).

As the plaintiffs note, the defendants omit discussion of Second Circuit precedent or case law within the Circuit directly on point.  See Reply at 6; see also Opp. at 3-9. The Second Circuit has given clear direction in a series of cases holding that state tort

9

claims are not preempted by section 301 when they present purely factual questions that only necessitate reference to or consultation of the CBA.  See supra, at 5-6.  Thus, the court strongly disagrees with the defendants' argument that the Tonas' claims require interpretation of the CBA provisions and Work Rules.  However, this court cannot say that the defendants' position lacked any "objectively reasonable" basis.  As the Circuit emphasized, "[t]he boundary between claims requiring 'interpretation' of a CBA and ones that merely require such an agreement to be 'consulted' is elusive." Wynn, 273 F.3d at 158.

Therefore, the Tonas's request for costs and expenses, including attorney's fees, is denied.

## V.   CONCLUSION

For the reasons discussed herein, the court grants the Tonas' Motion to Remand (Doc. No. 6).  The court remands this action to the Superior Court of Connecticut. Furthermore, in light of this Ruling, the Motion to Stay Deadlines (Doc. No. 16) is terminated as moot.

**SO ORDERED.**

Dated this 3rd of November 2023, at New Haven, Connecticut.


                                              /s/ Janet C. Hall
                                             Janet C. Hall
                                             United States District Judge